## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C ~~2603~~ 2063 | **DATE** | 3/21/2003 |
| **CASE TITLE** | Cheryl Alexander vs. Unlimited Progress Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendant's motion for summary judgment [doc.# 11] on Count I of the complaint is granted, and the remaining portion is denied. Plaintiff's motion for summary judgment [doc.# 10] on Count II of the complaint is granted, and the remaining part of that motion is denied. Status hearing is set for 04/03/03 at 9:00 a.m. to schedule any necessary further proceedings. The parties are directed to discuss settlement prior to the 04/03/03 status hearing.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 2 4 2003 | |
| | Notified counsel by telephone. | date docketed | 18 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 3/21/2003 date mailed notice | |
| JJK | courtroom deputy's initials | JJK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHERYL ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 02 C 2063 |
| ) | |
| UNLIMITED PROGRESS CORP., and ) | Magistrate Judge Schenkier |
| Illinois Corporation, d/b/a CREDITORS ) | |
| DISCOUNT & AUDIT CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

The plaintiff, Cheryl Alexander, has filed this action asserting two separate violations by the defendant, Unlimited Progress Corp., doing business as Creditors Discount & Audit Co. ("CDAC"), of the Fair Debt Collection Practices Act ("the FDCPA," or "the Act"), 15 U.S.C. § 1692 *et seq*. Count I of Ms. Alexander's complaint alleges that CDAC violated Sections 1692e and 1692f when CDAC attempted to collect a debt allegedly owed by Ms. Alexander to Dr. Joseph V. Kannankeril, at the time when that debt was subject to the automatic stay in Ms. Alexander's Chapter 13 bankruptcy proceeding. In Count II, Ms. Alexander alleges that CDAC violated Section 1692c(a)(2) when CDAC contacted Ms. Alexander directly in an attempt to collect the debt that she allegedly owed to Dr. Kannankeril, even though CDAC knew that Ms. Alexander was represented by an attorney with respect to that debt.

Presently before the Court are cross-motions for summary judgment filed by Ms. Alexander (doc. # 10) and CDAC (doc. #11). Based on the material and undisputed facts, the Court grants in

---

[1] On June 18, 2002 by consent of the parties, this case was reassigned to this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 (*see* doc. ## 8-9).

part and denies in part both motions. We grant CDAC's motion against Ms. Alexander on Count I of the complaint, but deny the remaining portion of the motion. The Court further grants Ms. Alexander's motion for summary judgment against CDAC as to Count II of the complaint, and we deny the remaining portion of the motion.

I.

Summary judgment may be granted when the lack of a genuine issue of material fact makes a trial unnecessary. Fed.R.Civ.P. 56(c). A material fact is one that determines the outcome of a motion under the substantive law which governs the motion. *Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the party seeking summary judgment meets that burden, the opposing party may not rely on the pleadings alone to create a genuine issue of material fact. *Id.* at 324. Local Rule 56.1(b)(3) states: "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." The opposing party may show a genuine issue exists by serving and filing, pursuant to Local Rule 56.1, a concise statement which identifies the material facts in dispute and which cites to evidentiary materials (*e.g.*, affidavits, depositions, answers to interrogatories, admissions, etc.) that support those facts. *Insolia*, 216 F.3d at 598.

II.

In this case, no genuine dispute of material fact exists. The following is a summary of the undisputed material facts.

On December 9, 1997, Ms. Alexander filed a Chapter 13 petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, which was styled as *In re Alexander*, (N.D. Ill. Bankr. No. 97-37827) (PSOF #5).[2] During that proceeding, Ms. Alexander filed a document entitled "Schedule F – Creditors Holding Unsecured Nonpriority Claims," and listed $1,125.00 allegedly owed to Dr. Kannankeril (PSOF #6). On or about January 27, 1998, the Clerk's Office of the United States Bankruptcy Court for the Northern District of Illinois sent a notice of Ms. Alexander's bankruptcy to Dr. Kannankeril via first class mail (PSOF #7). This notice listed Stuart B. Handelman as Ms. Alexander's attorney, provided Mr. Handelman's address, and listed the alleged $1,125.00 to Dr. Kannankeril (Pl.'s Mem., Ex.3). Dr. Kannankeril subsequently filed a claim in Ms. Alexander's bankruptcy proceeding on February 11, 1998 (PSOF #8). On August 21, 1998, Ms. Alexander's Bankruptcy Trustee issued a Trustee's Record of Creditor's Additional Claim. The Trustee's Record also listed Stuart B. Handelman as the attorney for Ms. Alexander, provided Mr. Handelman's address, and listed the alleged debt to Dr. Kannankeril as one to be paid (in part) under the bankruptcy plan (Pl.'s Mem., Ex. 4).[3]

---

[2]Hereafter "PSOF" refers to Plaintiff's Statement of Material Facts in support of her motion, and "DSOF" refers to Defendant's Statement of Material Facts in support of its motion, both submitted in accordance with Local Rule 56.1(b).

[3]This Court finds that CDAC's Local Rule 56 response does not create a genuine dispute of material fact as to whether the January 27, 1998 notice was sent to or received by Dr. Kannankeril. Indeed, the fact that Dr. Kannankeril shortly thereafter filed a claim in the bankruptcy proceeding (PSOF #8) is strong evidence that he received the notice. The only argument CDAC raises is that the notice should be disregarded as hearsay. We disagree. Hearsay is a statement made by an out of court declarant which is offered to prove the truth of the matter asserted in that statement. FED. R. EVID. 801. Ms. Alexander would not offer the notice for the truth of the matter asserted in the notice, but instead to show that Dr. Kannankeril was sent notice of her bankruptcy proceeding.

Dr. Kannankeril died in the Fall of 2000 (DSOF #10). Thereafter, on March 21, 2001, Dr. Kannankeril's office referred Ms. Alexander's account to CDAC for collection (DSOF #12).[4] CDAC acts as a debt collector, as defined by 15 U.S.C. § 1692a (PSOF # 4).

When Dr. Kannankeril's office transferred Ms. Alexander's account to CDAC for collection, it provided CDAC with a statement of Ms. Alexander's account, her social security number, phone number, and a statement of the amount of Ms. Alexander's outstanding debt (DSOF # 13). CDAC's policy is not to accept accounts from creditors when the creditor notifies CDAC that the debtor has filed for bankruptcy (DSOF # 20). If CDAC learns that a debtor has filed for bankruptcy after CDAC has accepted the debtor's account, then CDAC stops trying to collect the debt, cancels and returns the account to the creditor, and notifies both the creditor and the credit bureau of the debtor's bankruptcy (DSOF # 21, 23, 26, 29). However, CDAC has offered no evidence of any policy or practice it has to determine whether a debtor is represented by counsel before contacting him or her directly.

---

[4]This Court finds, contrary to Ms. Alexander's assertion, that no genuine dispute of fact exists regarding the date on which Dr. Kannankeril's office referred Ms. Alexander's account to CDAC. Ms. Alexander asserts that CDAC may not rely on the records cited by CDAC to establish the date on which Dr. Kannankeril transferred Ms. Alexander's file to CDAC because those records are hearsay. While Fed. R. Civ. P. 56(e) prevents parties from relying on inadmissible hearsay in summary judgment proceedings, *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("The evidence relied on must be competent evidence of a type otherwise admissible at trial. Thus a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment"), a party may rely on evidence submitted in a *form* not admissible at trial. *Celotex Corp.*, 477 U.S. at 324 (1986). "*Celotex* recognizes merely that evidence may be presented in a form not necessarily admissible at trial, such as an affidavit. But the facts asserted must be admissible if put into the proper form, such as live testimony." *Ty, Inc. v. MJC-A World of Quality, Inc.*, 93 C 3478, 1994 WL 36880, *7 n.3 (N.D. Ill., Feb. 8, 1994). *See also American Security Co. v. Hamilton Glass Co.*, 254 F.2d 889, 893 (7th Cir. 1958). Here, CDAC the facts asserted in the records in question are capable of being put into a form admissible at trial by showing that they are business records, *see* FED. R. EVID. 803(6). Ms. Alexander offers no evidence to show that CDAC could not lay this foundation at trial.

(Parenthetically, we note that Ms. Alexander raises similar hearsay objections to certain other paragraphs of CDAC's fact statement (*see* DSOF #'s 13, 18, 19, 27, 30). For the same reasons stated above, we find that CDAC may rely on these statements in the form they are presented on these summary judgment motions.)

Dr. Kannankeril's office did not notify CDAC of Ms. Alexander's bankruptcy, or provide CDAC with information that would indicate that Ms. Alexander had retained an attorney to represent her with respect to the debt allegedly owed to Dr. Kannankeril (DSOF #s 18, 19). After obtaining Ms. Alexander's account from Dr. Kannankeril's office, CDAC attempted to collect the debt allegedly owed by Ms. Alexander to Dr. Kannankeril. On March 22, 2001, CDAC sent a collection letter directly to Ms. Alexander seeking a payment of $1,125.00 (DSOF # 22). On May 7, 2001 CDAC sent a second collection letter directly to Ms. Alexander which also sought a payment of $1,125.00 (DSOF # 25). On May 22, 2001, an attorney informed CDAC that Ms. Alexander had filed a petition for bankruptcy (DSOF # 27). Upon receiving this information, CDAC ceased all collection activity on Ms. Alexander's account (DSOF # 30).

### III.

The FDCPA seeks to eliminate abusive, deceptive, and unfair debt collection practices. *Rutnya v. Collection Accounts Terminal, Inc.*, 478 F.Supp. 980, 981 (N.D. Ill. 1979). To trigger the protections of the FDCPA, a complaint must allege the existence of a debt as defined by the Act. *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002). Section 1692a(5) defines a debt as: "*any obligation or alleged obligation* of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692(a)(5) (emphasis added). Therefore, the FDCPA covers both admitted obligations of a consumer, and those that are alleged but may not, in fact, exist.

The alleged obligation at the center of the dispute between Ms. Alexander and CDAC is of the character required by Section 1692a(5). It is undisputed that Ms. Alexander incurred this obligation in connection with Dr. Kannankeril's performance of medical services – a consumer debt arising out of the performance of services for personal purposes, as required by Section 1692a(5). It is also undisputed that, by listing $1,125.00 as allegedly owed to Dr. Kannankeril on "Schedule F – Creditors Holding Unsecured Nonpriority Claims," filed in her bankruptcy proceeding (PSOF # 6), Ms. Alexander asserted the existence of a debt as defined by the FDCPA. Moreover, the actions of defendant CDAC evidence the existence of an alleged obligation as required by Section 1692a(5): on March 31, 2001 and again on May 7, 2001, CDAC sent letters directly to Ms. Alexander which alleged that Ms. Alexander had an obligation to pay $1,125.00 to Dr. Kannankeril (DSOF #22, 25). Based on these material and undisputed facts, the Court finds that Ms. Alexander has alleged the existence of a debt within the meaning of the FDCPA.[5]

### A.

Given that Ms. Alexander has alleged a debt as defined by the FDCPA, the Court turns to the question of whether Ms. Alexander is precluded from bringing an action under the FDCPA because CDAC attempted to collect a debt that, at the time, was subject to the automatic stay provision of Ms. Alexander's bankruptcy proceeding. To answer this question we must evaluate the interaction of two federal statutes -- the Bankruptcy Code and the FDCPA. As cautioned by the Seventh Circuit, when two federal statutes provide overlapping rights to a party, a court must endeavor to construe the statutes in a manner which gives effect to each. "Congressional intent behind one federal statute

---

[5]The present action thus may be distinguished from *Arruda*. Unlike the defendant in *Arruda*, CDAC attempted to collect an alleged obligation from Ms. Alexander that predated her bankruptcy filing, not to contract with Ms. Alexander regarding post-bankruptcy possessory rights in personal property.

should not be thwarted by the application of another federal statute if it is possible to give effect to both laws." *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 862 (7th Cir. 1998). But, should this Court determine that the two statutes are incompatible, we must decide which statute Congress intended to take precedence. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583-584 (7th Cir. 1999).

While it has not directly addressed whether Congress intended the FDCPA to prevail over the Bankruptcy Code, or vice versa, the Supreme Court has considered the interaction between the Bankruptcy Code and the federal statute of which the FDCPA is a part: the Consumer Protection Act. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997) (holding the FDCPA is a part of the Consumer Protection Act). In *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974), the Supreme Court held that the Consumer Protection Act's wage garnishment provisions did not apply within the context of a bankruptcy proceeding. The Supreme Court explained that the "legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of [the Bankruptcy Act] to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of creditors." *Kokoszka*, 417 U.S. at 650. Further, the Supreme Court stated "if despite [the protections of the Consumer Credit Protection Act], bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act." *Id.* at 651.

In addition, a number of courts within this Circuit have considered the interplay between the Bankruptcy Code and various state and federal laws. In *Cox v. Zale*, 239 F.3d 910 (7th Cir. 2001), the plaintiff had filed for bankruptcy. The plaintiff and the defendant then entered into a "debt-affirmation agreement" that was not filed with the bankruptcy court prior to the close of the

7

bankruptcy proceedings. As a result, the debt that was subject to that agreement was discharged by the bankruptcy court at the conclusion of the plaintiff's bankruptcy, and was therefore subject to the permanent discharge injunction provided by 11 U.S.C. § 524. After completing performance under the agreement, the plaintiff filed suit seeking rescission of the debt-affirmation agreement and refund of the amounts paid under it. The Seventh Circuit held that the rescission action was preempted by the Bankruptcy Code.

The Seventh Circuit explained that taken together, Section 524(a)(2) and 524(c) provide "'an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.'" *Cox*, 239 F.3d at 915. A creditor who attempts to collect a discharged debt subject to the permanent injunction provided by Section 524 may be found in contempt of the bankruptcy court that issued the discharge order. *Id.* The court of appeals reasoned that what plaintiff in substance claimed was that the defendant violated the permanent discharge injunction provided to the plaintiff by Section 524 of the Bankruptcy Code. The Plaintiff had not offered any additional reason that the debt-affirmation agreement should be rescinded; if the defendant had not violated Section 524, the plaintiff's rescission claim would fail. Noting that Section 524(a)(2) provided the plaintiff with a remedy for a creditor's violation of the discharge injunction, the court of appeals stated that the plaintiff could seek affirmative relief for a violation of the discharge order only in the bankruptcy court that issued the order. *Id.* at 917. The court reasoned that the bankruptcy court was in a "better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy." *Id.* at 916. As a result,

8

the Court held that the plaintiff was limited to the remedy provided by the Bankruptcy Code for such a violation. *Id.* at 917.

In *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000), the Seventh Circuit affirmed the dismissal of an FDCPA claim which alleged that a creditor filed a false statement of claim in the plaintiff's bankruptcy proceeding. Analyzing the plaintiff's claims under the doctrines of collateral estoppel and issue preclusion, the *Adair* court concluded that the plaintiff's failure to use the procedures provided by the Bankruptcy Code to challenge a creditor's proof of claim at the time the claim was filed precluded use of the FDCPA to attack the proof of claim after the claim had been confirmed. 230 F.3d at 896. The *Adair* court explained that allowing the plaintiff's FDCPA claim to proceed would threaten the integrity of the bankruptcy system. "Allowing collateral attacks of the type brought by Mr. Adair would give debtors an incentive to refrain from objecting in the bankruptcy proceeding and would thereby destroy the finality that bankruptcy confirmation is intended to provide." *Id.* at 895.

Several courts within this district also have held that the Bankruptcy Code preempts certain FDCPA actions. In *Bolen v. Bass & Assocs.*, 97 C 3944, 2001 WL 1249058, (N.D. Ill., Oct. 17, 2001), the debtor brought a class action under the FDCPA, alleging that the defendant creditor had violated the FDCPA by seeking to collect debts discharged in bankruptcy pursuant to unenforceable reaffirmation agreements. Applying the holding in *Cox*, the district court held that the debtor's exclusive remedy was "contempt sanctions for violation of § 524's discharge injunction" 2001 WL 1249058, at * 3.

9

In *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, No. 98 C 4280, 1999 WL 284788 (N.D. Ill., April 26, 1999), the district court granted a motion to dismiss an FDCPA claim premised upon a creditor's filing of an allegedly inflated proof of claim in the plaintiff's bankruptcy proceeding. The district court described the plaintiff's FDCPA claim as an "external challenge to alleged wrongdoing that occurred during bankruptcy proceedings . . . ." 1999 WL 284788, at * 2. In finding the FDCPA claim precluded by the Bankruptcy Code, the *Baldwin* court reasoned that allowing the FDCPA to apply to a proof of claim in a bankruptcy proceeding would frustrate the central purpose of the Bankruptcy Code – "to adjudicate and conciliate all competing claims to a debtor's property in one forum and one proceeding." *Id.* at 5. The Court further stated that allowing a debtor to seek a remedy under the FDCPA for a violation of the Bankruptcy Code for which the Code provides a remedy would tempt debtors to ignore the safeguards created by the Code, and thus would "undermine the entire bankruptcy system." 1999 WL 284788, * 5. *Id. See also Gray-Mapp v. Sherman*, 100 F. Supp. 2d 810, 813-14 (N.D. Ill. 1999) (debtor precluded from bringing an FDCPA claim based on allegation that creditor filed an inflated proof of claim in a bankruptcy proceeding where debtor did not challenge the proof of claim in the proceeding as provided for in the Bankruptcy Code).

On the other hand, in *Wagner v. Ocwen Federal Bank, FSB*, No. 99 C 5404, 2000 WL 1382222 (N.D. Ill., Aug. 28, 2000), the court held that the Bankruptcy Code does not provide the exclusive federal remedy for a debtor who is the subject of an attempt to collect a debt. In that case, the claim which the defendant sought to collect did not arise during the pendency of the bankruptcy proceedings and was not discharged by the bankruptcy court, as in *Cox*. Thus, the Court reasoned that the FDCPA action did not attempt to "bypass any remedies provided to her under the Code

10

while her bankruptcy petition was pending; indeed, she could not have raised these issues there because all of the creditors' activities post-dated the conclusion of her bankruptcy case." *Id.* at 1. In other words, the holding in *Wagner* applied to a claim that was not part of the bankruptcy case, but arose later in time.

From these authorities, we derive the principle that the Bankruptcy Code preempts claims that also would otherwise lie under the FDCPA – or, as in *Cox*, under state law – only in those cases where preemption is necessary to safeguard the integrity of the bankruptcy process. That principle strikes the balance between the application of the rule that preemption is not lightly inferred, *Palumbo Bros., Inc.*, 145 F. 3d at 862, and the need to ensure that the bankruptcy court is able to maintain exclusive control of the assets of the debtor's estate to ensure an orderly and fair distribution of assets. In order to properly strike that balance, we believe it necessary to examine not merely whether the action being challenged involves a debt that is subject to the control of the bankruptcy court, but also whether allowing that action to be challenged in an FDCPA action would undermine the exclusive control of the bankruptcy court. It is with this framework in mind that we consider the actions challenged by Ms. Alexander here: the attempt to collect the debt that was subject to the automatic stay, and sending the collection letters directly to Ms. Alexander even though she was represented by counsel.

1.

Ms. Alexander contends that the collection letters sent by CDAC on March 22, 2001 and May 7, 2001 violated Section 1692e(2)(A) because they falsely asserted that Ms. Alexander's debt to Dr. Kannankeril was immediately due, when in fact the debt was subject to the automatic stay provision of Ms. Alexander's bankruptcy proceeding provided by 11 U.S.C. § 362. Ms. Alexander

11

does not identify any other CDAC action which allegedly violates Section 1692e(2)(A). Thus, Ms. Alexander's Section 1692e(2)(A) claim rests entirely on CDAC's alleged action that also violated the bankruptcy code (*e.g.*, attempting to collect a debt subject to the automatic stay provision of a bankruptcy proceeding). Put another way, Ms. Alexander would have no Section 1692e(2)(A) claim to assert but for the existence of the bankruptcy proceeding and the automatic stay.

The automatic stay under Section 362 enjoins a debtor's pre-petition creditors from taking any action to collect their debts once the debtor has filed for bankruptcy. *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990). The primary purpose of the automatic stay is to prevent a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (quoting, *In re Frigitemp Corp.*, 8 Bankr. 284, 289 (S.D.N.Y. 1981). Section 362(h) a debtor has a right of action in the bankruptcy court against any creditor who "willfully violates" the automatic stay. 11 U.S.C. § 362 (h). Section 362(h) provides that such a debtor "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.*

In these circumstances, to allow Ms. Alexander to bring an FDCPA claim based on seeking to collect a debt in violation of the automatic stay would frustrate the purposes of the Bankruptcy Code. As in *Cox* and *Bolen*, which both involved attempts to remedy alleged violations of bankruptcy court orders, in this case the plaintiff seeks to remedy the alleged violation of a bankruptcy court order: the order imposing can automatic stay. To permit the plaintiff here to remedy an alleged violation of the automatic stay through an FDCPA action would encourage debtors to bypass the remedy provided by Section 362(h) for violations of the automatic stay, could

interfere with the authority of the bankruptcy court to enforce its own orders, and would lead to a fracturing of the plaintiff's bankruptcy proceedings that the Bankruptcy Code seeks to avoid.[6]

This same reasoning leads the Court to find that Ms. Alexander's Section 1692f claim is precluded by the Bankruptcy Code. Section 1692(f) states: "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Ms. Alexander asserts that CDAC's attempt to collect her alleged debt to Dr. Kannankeril, while that debt was subject to the automatic stay provision of her bankruptcy proceeding, is unfair or unconscionable and, as a result, violates Section 1692f. As with the claimed violation of Section 1692c, the collection letters sent to Ms. Alexander by CDAC are alleged to violate Section 1692f only because they violate the automatic stay provision of Ms. Alexander's bankruptcy proceeding. Consequently, this Court finds Ms. Alexander's Section 1692f claim precluded by the Bankruptcy Code, 11 U.S.C. § 362.

## 2.

Count II of Ms. Alexander's complaint alleges CDAC violated 15 U.S.C. § 1692c(a)(2), which states, in relevant part, that Ms. Alexander alleges that CDAC violated Section 1692c(a)(2) when it sent the collection letters, dated March 21, 2001 and May 7, 2001, directly to Ms. Alexander even though Ms. Alexander was then represented by an attorney with respect to the debt that CDAC sought to collect (Compl., ¶11). Unlike her FDCPA claim in Count I, Ms. Alexander's assertion that CDAC violated Section 1692c(a)(2) does not rest solely – or, indeed, at all – upon CDAC's alleged violation a provision of the Bankruptcy Code for which the Bankruptcy Code provides a remedy.

---

[6]The court in *Hyman v. Tate & Krilin*, 02 CV 242 (N.D. Ill. Nov. 1, 2002), declined to extend the reasoning of *Cox* to preclude an FDCPA claim based on a violation of the automatic stay provision in a bankruptcy proceeding. However, in so ruling, the Court observed that the parties had not sufficiently developed the point in briefing. Here, by contrast, the parties have thoroughly addressed this issue in their summary judgment submissions.

13

The FCDPA prohibits a debt collector from sending letters directly to any debtor who is represented by counsel, without regard to whether the debtor is in bankruptcy. Unlike the claim in Count I, which is based solely on an alleged violation of the Bankruptcy Code, Ms. Alexander's claim in Count II is not derivative at all of any violation of the Bankruptcy Code.

In these circumstances, allowing Ms. Alexander to bring an FDCPA claim for CDAC's direct communication with Ms. Alexander regarding a debt with respect to which she had retained counsel does no violence to the Bankruptcy Code's central objective of consolidating and evaluating all competing claims to a debtor's personal property in one court. Nor would allowing Ms. Alexander to bring a claim for the violation of Section 1692c(a)(2) permit her to "bypass the procedural safeguards in the (Bankruptcy) Code" as cautioned against in *Baldwin*." 1999 WL 284788, at *2. Unlike the case with violation of the automatic stay or of the discharge injunction, the bankruptcy code provides no special remedy for inappropriate contacts with a represented debtor.

Permitting Ms. Alexander to bring an action under the FDCPA for CDAC's alleged violation of Section 1692c(a)(2) is consistent with this Circuit's preferred method of statutory construction. *Palumbo Bros., Inc.*, 145 F.3d at 862 ("Congressional intent behind one federal statute should not be thwarted by the application of another federal statue if it is possible to give effect to both laws"). With respect to Ms. Alexander's claim in Count II, the Bankruptcy Code and the FDCPA can both be given effect by allowing Ms. Alexander to bring an FDCPA action based on CDAC's alleged violation of Section 1692c(a)(2). Consequently, CDAC's motion for summary judgment against Ms. Alexander on Count II of the complaint is denied.

14

**B.**

Having decided that Count II is not preempted by the Bankruptcy Code, we now consider whether Ms. Alexander should receive summary judgment in her favor on that claim. A debt collector violates Section 1692c(a)(2) if the debt collector contacts a debtor directly regarding a debt when the collector "knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain such attorney's name and address . . . ." Ms. Alexander alleges, and CDAC does not dispute, that CDAC sent Ms. Alexander collection letters seeking payment of a debt allegedly owed to Dr. Kannankeril at a time when Ms. Alexander was represented by an attorney with respect to that debt (PSOF #10). Therefore, to rule on Ms. Alexander's motion, this Court must decide whether, within the meaning of Section 1692c(a)(2): (1) CDAC knew that Ms. Alexander was represented by an attorney with respect to the debt allegedly owed to Dr. Kannankeril when CDAC sent Ms. Alexander the collection letters on March 21, 2001 and May 2, 2001; or (2) CDAC had knowledge of or could readily ascertain the name and address of Ms. Alexander's attorney.

In this case, it is undisputed that Dr. Kannankeril knew that Ms. Alexander was represented by counsel with respect to the alleged debt; but, it also is undisputed that Dr. Kannankeril's office did not convey that information to CDAC. Thus, at the threshold, we must decide whether the creditor's knowledge of the representation may be imputed to the debt collector so as to satisfy the "knowledge" prong of Section 1692c(a)(2).

In line with other decisions addressing this question, we believe the answer is yes. *See Micare v. Foster & Garbus*, 132 F. Supp. 2d 77 (N.D.N.Y. 2001); *Powers*, 107 F. Supp. 2d at 169; *see generally FTC Official Staff Commentary* §805(a)(2), 53 Fed. Reg. 50,097 (1988) (implying a

15

creditor's knowledge may be imputed to a debt collector). In *Micare*, the court denied a motion to dismiss a plaintiff's FDCPA claim where the plaintiff alleged that a creditor had actual knowledge that the plaintiff was represented by an attorney with respect to a debt, but did not allege that the defendant debt collector had actual knowledge of such representation. *Micare*, 132 F.Supp.2d at 80-81. The *Micare* court reasoned that to permit a creditor to refrain from informing a debt collector of a debtor's representation by an attorney would "'utterly eviscerate the protections afforded to debtors by the FDCPA.'" *Id.* at 80 (quoting *Powers v. Prof'l. Credit Services, Inc.*, 107 F. Supp. 2d 166, 168 (N.D.N.Y 2000)). The court reasoned that each time a creditor learned a debtor had retained representation with respect to a debt, the creditor could transfer the debt to a debt collector, fail to inform the debt collector of the representation, and allow the debt collector "to contact the debtor directly without fear of liability under the FDCPA." *Micare*, 132 F. Supp. 2d at 80. Consistent with this rationale, *Micare* created a limited "safe harbor" for a debt collector in these circumstances: if a debt collector asks a creditor if a debtor is represented by counsel with respect to the debt referred, and the creditor intentionally or mistakenly fails to inform the debt collector of such representation, *Micare* would refrain from imputing the creditor's actual knowledge to the debt collector. *Id.* at 80-81.

We find the reasoning of *Micare* persuasive, and applicable here. The undisputed facts show that the creditor, Dr. Kannankeril, had actual knowledge that Ms. Alexander was represented by counsel with respect to the alleged debt referred to CDAC (*see* PSOF ## 4, 7). On the facts of the case, imputing Dr. Kannankeril's knowledge to CDAC is necessary to insure that a debtor like Ms. Alexander gets the benefits of her retention of counsel, and that her decision to retain counsel is not circumvented by a creditor's strategic failure to disclose and the debt collector's failure to ask

about the debtor's representation. The facts submitted on summary judgment do not reveal why Dr. Kannankeril's office did not disclose to CDAC that Ms. Alexander was represented by counsel on the debt CDAC was being asked to collect. More tellingly, for purposes of the "safe harbor" created by *Micare*, CDAC has offered no evidence that it ever asked Dr. Kannankeril's office if Ms. Alexander was represented. Had CDAC asked whether Ms. Alexander was represented and been given incorrect information, it would be a harsh result to hold CDAC responsible for the creditor's misconduct. But, that is not the case here, because CDAC never asked the question.

Therefore, this Court finds that Dr. Kannankeril had actual knowledge that Ms. Alexander was represented by an attorney with respect to the alleged debt in question may be imputed to CDAC. As a result, when CDAC sought to collect that debt in a letter sent directly to Ms. Alexander on March 21, 2001 and May 7, 2001, CDAC violated Section 1692c(a)(2), as a matter of law.

CDAC may avoid liability for that violation if CDAC can establish that its violation of Section 1692c(a)(2) resulted from a bona fide error as defined in Section 1692k(c) of the FDCPA. Section 1692k states in relevant part:

> A debt collector may not be held liable in any action brought under this [subchapter] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.*

*Id.* at §1692k(c) (emphasis added).

In *Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997), the appeals court affirmed a grant of summary judgment for a defendant debt collector based on the bona fide error defense. The court explained that debt collectors are not required to "conduct an independent investigation into the legal intricacies of the client's contract" to ensure that a debt is legally valid. *Id.* at 833-834. Further, the

court explained that the defendant's debt collector had demonstrated the existence of procedures reasonably adapted to avoid a violation of the FDCPA because the debt collector required its creditor clients to state under oath that each charge relating to the referred debt was true and correct. *Id.* at 834. Similarly, in *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140 (N.D. Ill. 1998), the court granted summary judgment for a debt collector based upon the bona fide error defense provided in Section 1692k(c). In *Jenkins*, the court found that the debt collector maintained procedures sufficient to avoid FDCPA violations where the debt collector advised its clients in writing "to submit only those charges to which they are legally entitled," and also instructed its sales staff to advise prospective clients of the same. *Jenkins*, 999 F. Supp. at 1141-1142.

Here, unlike the debt collectors in the two *Jenkins* cases, CDAC has not offered evidence that it maintained procedures reasonably adapted to avoid a violation of the FDCPA. CDAC has not provided evidence that CDAC requires its creditor clients to affirmatively state whether a debtor has retained counsel with respect to the debt the creditor refers to the CDAC for collection. Nor has CDAC offered evidence that CDAC advises its creditor clients in writing that CDAC must be informed if a debtor has retained an attorney with respect to the debt intended for collection. Although CDAC has a procedure whereby it stops contacting the debtor directly once it learns that the debtor is represented by counsel (DSOF # 29), that is a procedure that seeks to avoid compounding an error that already has occurred - it is not "reasonably adapted" to avoid the improper communication from occurring in the first place.

Because this Court finds CDAC has violated Section 1692c(a)(2) as a matter of law and has not established that such violation resulted from a bona fide error as provided in Section 1692k(c),

18

Ms. Alexander's motion for summary judgment against CDAC on Count II of the complaint is granted.

## CONCLUSION

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (doc. #11) on Count I of the complaint is granted, and the remaining portion is denied. It is further ordered that the plaintiff's motion for summary judgment (doc. #10) on Count II of the complaint is granted, and the remaining part of that motion is denied. The matter is set for a status conference on April 3, 2003 to schedule any necessary further proceedings. The parties are directed to discuss settlement prior to that status conference.

**ENTER:**

*/s/ Sidney I. Schenkier*

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: March 21, 2003**